# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville April 23, 2013

## STATE OF TENNESSEE v. JAMES HARDING DALTON

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2557    Cheryl Blackburn, Judge**

_____

**No. M2012-01575-CCA-R3-CD - Filed July 18, 2013**

_____

The Defendant, James Harding Dalton, pleaded guilty to especially aggravated burglary, a Class B felony. *See* T.C.A. § 39-14-404 (2010). The trial court sentenced him as a Range I, standard offender to eleven years' confinement. On appeal, the Defendant contends that the court erred in sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Mike Urquhart, Nashville, Tennessee, for the appellant, James Harding Dalton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to the prosecutor's recitation of the facts at the guilty plea hearing, the Defendant and his codefendant, both juveniles, broke into the victim's house on April 17, 2011, at about 5:30 p.m. The victim was in her seventies and lived alone. The Defendant and the codefendant took the victim's property, and the codefendant assaulted the victim. The victim's neighbors were familiar with the Defendant and the codefendant, saw them around the victim's house, and gave their names to the police. The police questioned the Defendant and the codefendant. The Defendant admitted burglarizing the victim's house but said the codefendant injured the victim. The codefendant admitted assaulting the victim. The victim suffered serious injuries during the incident, was unable to live alone afterward,

and "has never been the same mentally." The Defendant admitted taking money, which the police recovered. The Defendant testified for the State in the codefendant's case in exchange for his plea agreement.

At the sentencing hearing, Brenda Grantham, the victim's daughter, testified that at the time of the incident, the victim was seventy-five years old and lived alone. She said that the victim's neighbor called and told her to come to the victim's house because the victim was hurt and that the paramedics were there when she arrived. She identified photographs of the victim's injuries and said the victim's house "was a mess."

Ms. Grantham testified that the victim could not remember what happened. She said the victim spent time at Stallworth Rehabilitation and woke one night screaming, "[T]hey're trying to kill me, they're trying to kill me." She said that the employees at the rehabilitation center said the victim was reliving the incident. She said the victim fell over the bed rail and hit her head that night and did not remember the incident. She said that after the assault, the victim spent a few days in the hospital and several months at Stallworth Rehabilitation and was transferred to Bethany. She said that she tried to bring the victim home but that the victim had to return to the nursing home. She said that before the incident, the victim gardened, went to the grocery store, took care of her house, and was in "good shape for her age." She said that after the incident, the victim could not operate the television, repeated herself, and suffered memory loss and that the lingering effects seemed to be mental rather than physical. She said the victim could no longer care for herself or live alone.

Karen Prichard, the Defendant's mother, testified that the Defendant was seventeen at the time of the sentencing hearing, that he was a "good kid" who played basketball, and that he "just got mixed up with the wrong boy." She said the Defendant stated that the victim's niece told him to go into the victim's house, told him where to find $500, and told him when the victim would not be home. She said the Defendant told her that he entered the house and went straight to the back where the money was located, that when he returned, the codefendant had pushed the victim into a mirror, causing it to fall and break, and that the victim was cut by the broken mirror. She said the Defendant swore he did not touch the victim.

Ms. Prichard testified that the Defendant had learned his lesson from the incident. She said that he sat in his cell twenty-three hours per day and spent most of the one hour outside his cell trying to contact her. She said he was a naive "young kid" and did not have a chance in jail. She said the Defendant's grandmother was his foster parent and "babied him." She said her oldest son's father was mean and abusive toward the Defendant. She said the Defendant was going to school at the time of the incident but had not been able to attend classes since being transferred from the juvenile detention center to the jail. She said that if

the Defendant were released, he could live with her and that she had a job secured for him. She said the Defendant was lonely in jail.

On cross-examination, Ms. Prichard testified that the victim's house was about a twenty-minute walk from where they lived at the time of the incident and that she was not familiar with who lived in the house before the incident. She said the Defendant knew an elderly woman lived in the house because he knew the victim's niece.

Upon the trial court's questioning, Ms. Prichard testified that she could not remember the name of the niece who told the Defendant to enter the house and take the money. She said the Defendant entered the house to take the $500.

The trial court applied two enhancement factors. First, it found that factor (1) applied to previous criminal behavior and that the Defendant had used marijuana, which was criminal behavior. *See* T.C.A. § 40-35-114(1) (2010) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range."). The court noted that the Defendant did not have a serious criminal history. Second, the court found that enhancement factor (5) applied because the victim was treated or allowed to be treated with exceptional cruelty beyond that necessary to commit the offense. *See* T.C.A. § 40-35-114(5) ("The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense."). The court recognized that serious bodily injury was an element of the Defendant's conviction but stated that the statute did not preclude the use of the enhancement factor when the injury went beyond that necessary to commit the offense. The court found that the victim was treated with exceptional cruelty based on the photographs of the victim, the injuries to her head, the damage to the house, and the testimony about the victim's inability to remember anything.

The trial court found that although the Defendant was young, he did not lack substantial judgment in committing the offense because he knew he was going to the house to take $500 and that his age was not a mitigating factor. The court stated that the Defendant was responsible for the criminal behavior in the house even if he did not participate in it. The court found that the Defendant did not have a mental illness that impaired his ability to appreciate the wrongfulness of his conduct and that he did not assist authorities in uncovering offenses not previously detected but that the mitigating factor for the Defendant's helping the police in locating or recovering property might apply. The court stated that although it considered the Defendant's troubling childhood and ADHD diagnosis, it did not give them "all that much weight."

The trial court gave great weight to enhancement factor (5) and little weight to the mitigating factors and sentenced the Defendant to eleven years' confinement. The court

found that the Defendant was not eligible for probation with an eleven-year sentence and gave him jail credit for the time he had served. This appeal followed.

The Defendant contends that the trial court erred in sentencing him to eleven years. He argues that the evidence failed to prove he engaged in criminal conduct in excess of that needed to establish his range. He argues that although the victim suffered serious bodily injury, the codefendant caused those injuries and that he did not inflict the injuries or allow them to be inflicted. He asserts that the court erred in failing to consider alternative sentencing. The State contends that the court did not abuse its discretion because the sentence was within the range, supported by the evidence, and consistent with the purposes and principles of sentencing. We agree with the State.

The Tennessee Supreme Court adopted a new standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d 68 at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

As a Range I, standard offender convicted of especially aggravated burglary, a Class B felony, the Defendant faced an eight- to twelve-year sentence. *See* T.C.A. § 40-35-112(a)(2) (2010). The eleven-year sentence was within the statutory range and presumptively reasonable.

Regarding the Defendant's argument that the trial court erred in applying enhancement factor (1), the court stated that "his use of marijuana is definitely criminal behavior" and that he did not "have a serious criminal history, but he certainly [had] one." The Defendant was seventeen years old at the time of the sentencing hearing. During his presentence investigation, the Defendant admitted daily marijuana use since he was twelve years old, underage drinking since he was fourteen years old, committing crimes while intoxicated, taking Xanax almost daily since he was thirteen or fourteen years old, and "huffing 'paint glue'" once. He made similar admissions during his forensic mental health evaluation. His mother stated during the forensic evaluation that the Defendant smoked "quite a bit" of marijuana. The court did not state that it placed great weight on factor (1) as it did for factor (5), and it correctly found that based on the Defendant's admitted marijuana use, factor (1) applied.

Regarding the Defendant's argument that the trial court erred in applying enhancement factor (5) because serious bodily injury was an element of the offense, especially aggravated burglary is the "[b]urglary of a habitation or building other than a habitation . . . [w]here the victim suffers serious bodily injury." T.C.A. § 39-14-404. Before a trial court may apply enhancement factor (5) to increase a sentence, the facts of the case must support a "finding of cruelty under the statute 'over and above' what is required to sustain a conviction for [the] offense." *State v. Arnett*, 49 S.W.3d 250, 258-59 (Tenn. 2001). The court reviewed the photographs of the victim and her house, considered testimony about the victim's inability to remember anything after the attack, and found that the victim was treated with exceptional cruelty beyond that necessary for the commission of the offense.

The Defendant argues that the evidence established the codefendant assaulted the victim, not him. A trial court may apply factor (5) if the defendant allowed the victim to be treated with exceptional cruelty during the commission of the offense. *See* T. C. A. § 40-35-114(5). The defendant does not personally have to treat the victim with exceptional cruelty.

The record shows that the codefendant pushed the elderly victim into a mirror and that the mirror broke, cutting her. The photographs of the victim's injuries suggest a more extensive assault than the Defendant or his codefendant admitted and show DVDs, candy, and other household items scattered across the room. As a result of the assault, the victim suffered severe and extensive bruising, not just cuts, on her face and arms. She was hospitalized for days after the attack, spent months in a rehabilitation facility, and required nursing home care rather than being able to return to her own home. Having viewed the photographs taken of the victim and her house following the assault and having considered the extent of her injuries and the disarray of her belongings, we conclude that the trial court properly found that the victim was treated with exceptional cruelty over and above that necessary for the offense of especially aggravated burglary.

The trial court applied enhancement factors (1) and (5), giving great weight to factor (5). It gave little weight to the mitigating factors and sentenced the Defendant to eleven years' confinement. The court did not depart from the purposes and principles of sentencing, imposed a sentence within the statutory range, and did not err by sentencing the Defendant to eleven years, making him ineligible for alternative sentencing. *See* T.C.A. § 40-35-303(a) (2010). We conclude the sentence was not an abuse of discretion.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE